## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ ) | | |
| DASTECH INTERNATIONAL, INC., et al., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | CIV. NO._____ |
| ) | | |
| ALBERTO GONZALES, et al., ) | | |
| ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

### PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Rule 65.1, Dastech International, Inc. ("Dastech") and Dastech Industries, Ltd. ("DIL") respectfully request that this Court temporarily restrain Defendants from:

(1) refusing to give full force and effect to Plaintiffs' Drug Enforcement Agency ("DEA") Registrations, Nos. 001277DRX  (Dastech) and 00128DNY (DIL);

(2) recognizing the "voluntary surrender" forms executed by Neil Villacari on June 5, 2007; and

(3) destroying or otherwise harming or disposing of  Plaintiffs' property as described in the Plaintiffs' Complaint and Plaintiffs' Memorandum and Points of Authority In Support of Plaintiffs' Motion for a Preliminary Injunction.

Plaintiffs respectfully request oral argument on their Motion for Preliminary Injunction on Monday July 23, 2007.   A certificate of counsel regarding notice of this application to the Defendants  is attached.

Dated:  July 20, 2007.

Respectfully submitted,

Janet Kravitz *
jkravitz@kravitzllc.com
KRAVITZ, BROWN & DORTCH, LLC
65 East State Street, Suite 200
Columbus, Ohio  43215
Tel:  614.464.2000
Fax:  614.464.2002

Max Kravitz*
mkravitz@kravitzllc.com
KRAVITZ, BROWN & DORTCH, LLC
65 East State Street, Suite 200
Columbus, Ohio  43215
Tel:  614.464.2000
Fax:  614.464.2002

Amy E. Richardson, DC Bar # 472284
Harris, Wiltshire & Grannis
1200 18th Street, NW
Washington, DC 20010
Tel: 202-730-1300
Fax: 202-730-1301

Attorneys for Plaintiff
Dastech International, Inc.

* Pro hac vice motions for appearance pending.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2007 a copy of the foregoing Plaintiffs' Motion for a Preliminary Injunction was served on each of the defendants, as well as the United States Attorney for the District of Columbia, along with the Complaint.

_____/s/_____
Lynsey Knowles

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
DASTECH INTERNATIONAL, INC., et al.,                    )
                                                        )
                        Plaintiffs,                     )
                                                        )
            v.                                          )          CIV. NO._____
                                                        )
ALBERTO GONZALES, et al.,                               )
                                                        )
                                                        )
                        Defendants.                     )
_____)

## COUNSEL CERITICATION FOR A TEMPORARY RESTRAINING ORDER

Pursuant to Local Civil Rule 65.1 counsel for Plaintiffs Dastech International, Inc. ("Dastech") and Dastech Industries, Ltd. ("DIL") certify that:

1.      On Friday July 20, 2007 Plaintiffs Dastech and DIL filed Plaintiffs' Motion for Temporary Restraining Order, Motion for Preliminary Injunction, accompanying Memorandum of Points and Authorities, and civil complaint with the federal district court in the District of Columbia.

2.      On Friday July 20, 2007, after filing with the district court, counsel for Plaintiffs Dastech and DIL will immediately direct copies of Plaintiffs' Motion for Temporary Restraining Order, Motion for Preliminary Injunction, accompanying Memorandum of Points and Authorities, and complaint in the above caption case by commercial process servers to all named defendants.

2.      On Friday July 20, 2007 counsel for Plaintiffs will also immediately contact counsel at DEA by phone alerting them of Plaintiff's Motion for Temporary Restraining Order.

3.      On Friday July 20, 2007 counsel for Plainitffs will immediately provide copies of Plaintiff's Motion for Temporary Restraining Order, Motion for Preliminary Injunction, accompanying Memorandum of Points and Authorities, and complaint by email to counsel at DEA.

4.      Plaintiffs also request a hearing on its Motion for Temporary Restraining Order on Monday July 23, 2007 to allow time for actual notice to all named defendants.

Dated:  July __, 2007.                    Respectfully submitted,

Janet Kravitz *
jkravitz@kravitzllc.com
KRAVITZ, BROWN & DORTCH, LLC
65 East State Street, Suite 200
Columbus, Ohio  43215
Tel:  614.464.2000
Fax:  614.464.2002

Max Kravitz*
mkravitz@kravitzllc.com
KRAVITZ, BROWN & DORTCH, LLC
65 East State Street, Suite 200
Columbus, Ohio  43215
Tel:  614.464.2000
Fax:  614.464.2002

____/s/_____
Amy E. Richardson, DC Bar # 472284
Harris, Wiltshire & Grannis
1200 18th Street, NW
Washington, DC 20010
Tel: 202-730-1300
Fax: 202-730-1301

* Pro hac vice motions for appearance pending.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
DASTECH INTERNATIONAL, INC., et al.,   )
   )
       Plaintiffs,   )
   )
      v.   )     CIV. NO._____
   )
ALBERTO GONZALES, et al.,   )
   )
   )
       Defendants.   )
_____)

## [PROPOSED ORDER] GRANTING PLAINTIFFS' MOTION
## FOR A TEMPORARY RESTRAINING ORDER

Upon consideration of the Motion of Plaintiffs Dastech International, Inc. and

Dastech Industries, Ltd. (collectively "Plaintiffs"), and pursuant to Rule 65(b) of the

Federal Rules of Civil Procedure,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Temporary Restraining

Order is **GRANTED**.  Defendants must give full force and effect to Plaintiffs' Plaintiffs'

DEA Registrations, Nos. 001277DRX  (Dastech International, Inc.) and 00128DNY

(Dastech Industries, Ltd.), pending the hearing on Plaintiffs' Motion for a Preliminary

Injunction.

**IT IS HEREBY FURTHER ORDERED** that Defendants are enjoined  from

destroying or otherwise harming or disposing of  Plaintiffs' property as described in the

Complaint pending the hearing on Plaintiffs' Motion for a Preliminary Injunction.

Dated:  July ___, 2007.

_____
United States District Court Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                        )
DASTECH INTERNATIONAL, INC., et al,    )
                                                        )
               Plaintiffs,                          )
                                                        )
        v.                                             )        CIV. NO._____
                                                        )
ALBERTO GONZALES, et al.,              )
                                                        )
                                                        )
               Defendants.                        )
_____)


<u>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR A**
**PRELIMINARY INJUNCTION**</u>

**PRELIMINARY STATEMENT**

Plaintiff Dastech International Inc., ("Dastech") is a domestic business corporation organized and registered pursuant to the laws of the State of New York. Dastech's principal place of business is located at 10 Cutter Mill Road, Suite 400, Great Neck, New York 11021. Dastech was incorporated on July 1, 1980 and has been in business continually since that date.

Plaintiff Dastech Industries, Ltd. ("DIL") is a domestic business corporation organized and registered pursuant to the laws of the State of New York. DIL's principal place of business is 10 Cutter Mill Road, Suite 400, Great Neck, New York, 11021. DIL was incorporated on August 4, 1995.

Dastech imports industrial chemicals, pharmaceutical products and other varied products. Pursuant to 21 U.S.C. § 957 (a), Dastech is a registered importer of List 1 chemicals; specifically, Pseudoephedrine, Ephedrine, Phenylpropanolamine and Red Phosphorous. Dastech is registered by the United States Drug Enforcement Administration ("DEA") to import these List 1 chemicals into the United States. It possesses several registrations. Each registration is linked to the public warehouse that physically warehouses the imported product.

DIL is a distributor of products, including List 1 chemicals and is registered by the DEA to distribute such products.

On approximately June 5, 2007 the DEA coerced Neil Villacari, the owner of the Hawks Express warehouse where some of Dastech's imported List 1 chemicals were located, to sign a DEA Form – 104(c), Voluntary Surrender of List 1 Chemical Privileges" in connection with the DEA registrations for both Dastech and DIL. The DEA also seized the registration certificates

2

that were in the possession of Hawks Express. Mr. Villicari admittedly had no authority to sign

the forms on behalf of Dastech or DIL.

On June 21, 2007, the DEA unlawfully seized Dastech's property identified as follows:

1.  10 DRUMS X 25 KG. FOR A TOTAL OF 2R5R0 KG. OF PSEUDOEPHEDRINE
AND 319 DRUMS X 45 KG. FOR A TOTAL OF 14,355 KG. OF RED
PHOSPHOROUS, SEIZED BY DEFENDANTS FROM HAWK'S EXPRESS, INC.,
1000 FRANK E. RODGERS BLVD., S., HARRISON, NEW JERSEY  07029

2.  40 DRUMS X 25 KG. FOR A TOTAL OF 12000 KG. OF PSEUDOEPHEDRINE
AND 256 DRUMS X 50 KG. FOR A TOTAL OF 1300 KG. OF
PHENYLPROPANOLAMINE, SEIZED BY DEFENDANTS FROM THE U.S.
CUSTOMS WAREHOUSE, 888 DOREMUS AVE., NEWARK, NJ  07114

3.  40 DRUMS x 25KGS FOR A TOTAL OF 1,000 KGS OF LIST 1 CHEMICALS
SEIZED BY DEFENDANTS FROM THE U.S. CUSTOMS WAREHOUSE, 300
WESTERN AVENUE, STATEN ISLAND, NEW YORK  10303

The DEA has stated that it intends to destroy the seized property, which has a value of

approximately $235,000.00.

In order to prevent irreparable harm to Plaintiffs' businesses pending a full hearing on the

merits that might not transpire for one year or more, and to protect Plaintiffs' constitutional right

to due process, Dastech International, Inc. ("Dastech") and Dastech Industries, Ltd. ("DIL") seek

to preliminarily enjoin Alberto Gonzales, Attorney General of the United States, Karen P. Tandy,

Administrator of the Drug Enforcement Administration, and the Drug Enforcement

Administration (collectively "DEA").  The following injunctive relief is requested:

1.      The DEA shall give full force and effect to Dastech's  DEA Registration, No.

001277DRX and DIL's DEA Registration No. 00128DNY;

2.      The DEA Form 104(c) - "Voluntary Surrender of List 1 Chemical Privileges"

purporting to surrender the DEA Registrations of Dastech and DII , executed by Neil

Villacari on June 5, 2007 be rendered null and void;

3

3.      The DEA shall be restrained from destroying the seized property; and

4.      The DEA shall be ordered to return the seized property to Plaintiffs forthwith.

There are two primary components of this motion for a preliminary injunction.

**First**, the DEA intimidated, pressured and coerced Mr. Neil Villacari into signing a "Voluntary Surrender Form" for Dastech's DEA Registration 001277DRX. The DEA also intimidated, pressured and coerced Mr. Neil Villacari into signing a "Voluntary Surrender Form" for DIL's DEA Registration 00128DNY.

Presumably, the reason that the DEA desired "voluntary surrenders" of Plaintiffs' registrations is that without the "voluntary surrenders," the DEA would have to abide by extensive, detailed statutes and regulations in order to suspend or revoke its registrations. *See* 21 U.S.C. § 958(d); 21 C.F.R. §§ 1309.43-55. By obtaining "voluntary surrenders," the DEA need not afford registrants due process at all because there are no longer registrations to suspend or revoke. Even if Mr. Villacari could be considered a person with sufficient authorization to surrender Plaintiffs' registrations (which he is not), the surrenders effected by the DEA were clearly involuntary and thereby ineffective and void.

**Secondly**, Plaintiffs request this Court to restrain Defendants from seizing, keeping, destroying or otherwise preventing Plaintiffs from possessing and selling the property set forth above and further to order the Defendants to forthwith return said property to Plaintiffs. As set forth in more detail below, the aforementioned products were lawfully imported in compliance with all DEA regulations, were stored in a lawful manner and were imported pursuant to purchase orders executed by Plaintiffs' long-standing customers. Dastech has already been severely harmed by the unlawful taking of its property. Not only does the seizure represent a loss of sales of approximately $235,000.00, but three of Dastech's customers have already

4

cancelled orders for products as a direct result of the DEA's actions. Those orders total approximately $65,000.00. The harm to Dastech's reputation cannot be underestimated. Even if the DEA's conduct in seizing Dastech's registrations and products is ultimately found to be unlawful or improper and Dastech's property is returned, its customers may not return because of the DEA's dissemination of defamatory and harmful statements about Plaintiffs.

## STATEMENT OF FACTS

### I. Regulatory Overview

The Controlled Substances Act ("CSA") was enacted as Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970. The CSA forms the basis for federal government regulation of the manufacture, importation, possession, and distribution of certain drugs and List 1 chemicals. Dastech imports List 1 chemicals. Dastech does not import controlled substances.

Under the CSA, 21 U.S.C. § 957(a) requires importers of List 1 chemicals to have a current registration issued by the Attorney General unless such person is exempt from registration. 21 U.S.C. § 957(b) exempts various persons or entities from registration and permits their possession of List 1 chemicals without registration.[1]

---

[1] 21 U.S.C. § 957(b)(1) The following persons shall not be required to register under the provision of this section and may lawfully possess a controlled substance or list I chemical:

    (A) An agent or an employee of any importer or exporter registered under section 958 of this title if such agent or employee is acting in the usual course of his business or employment.

    (B) A common or contract carrier or warehouseman, or an employee thereof, whose possession of any controlled substance or list I chemical is in the usual course of his business or employment.

    (C) An ultimate user who possesses such substance for a purpose specified in section 802(25) of this title and in conformity with an exemption granted under section 956(aw) of this title.

(2) The Attorney General may, by regulation, waive the requirement for registration of certain importers and exporters if he finds it consistent with the public health and safety; and may

21 U.S.C. § 958(c)(2)(A) states that the Attorney General "shall register" an applicant to import or export a List 1 chemical unless the Attorney General determines that registration of the applicant is inconsistent with the public interest.  Once a registration is issued, 21 U.S.C. § 958(d)(2) permits the Attorney General to revoke or suspend a registration under subsection (c) if he determines that such registration is inconsistent with the public interest.[2]  Before taking action to revoke or suspend a registration, the Attorney General must serve upon the registrant an order to show cause why the registration should not be revoked or suspended.   The order to show cause must contain a statement of the basis and direct the registrant "to appear before the Attorney General at a time and place stated in the order, but in no event less than thirty days after the date of receipt of the order.  21 U.S.C. § 958(d)(4).  The CSA requires that the factors set forth in 21 U.S.C. § 823(h) be considered in determining the public interest.

In this case, no administrative proceedings have been initiated to revoke or suspend any of the registrations of Dastech.  Of course, this is because the DEA coerced a non-authorized person to "voluntary surrender" Dastech's constitutionally-protected property interest in its registrations, thereby circumventing the process that Congress has declared is due before a registration can be suspended or revoked.

In addition to equitable relief, the Administrative Procedure Act ("APA") states "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . [is] entitled to judicial review thereof."  5 U.S.C. § 702.  To determine whether agency action is arbitrary or capricious, the court must consider whether: the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of

---

authorize any such importer or exporter to possess controlled substances and list I chemicals for purposes of importation and exportation.
[2] In determining the public interest, the factors enumerated in paragraphs 1-6 of 21 U.S.C. § 823(a) must be considered.

the problem, offered an explanation for its decision that runs counter to evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise. *Motor Vehicles Mfgrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29,

43 (1983).

Generally, the disputed agency action must be "final agency action." 5 U.S.C. § 704.

This requirement, however, may be avoided when review is sought pursuant to specific

authorization in the substantive statute. The plain language of the CSA states that a registrant

subject to immediate suspension of registration may seek judicial review by a district court

before final agency action. Thus, this court has the authority to review the agency action

although it is not final agency action. 21 U.S.C. § 924(d); *Neil Laboratories, Inc. v. Ashcroft*,

217 F. Supp. 2d 80, 85 (D.D.C. 2002); *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 823-

24 (5th Cir. 1976).

In addition to the Constitutional requisites that demand that an injunction issue in this

case, 21 U.S.C. § 958(d)(5) provides that a court of competent jurisdiction may dissolve any

suspension that might be instituted by the Attorney General against any registrant.

## II.     Factual Overview

1.     Dastech imports industrial chemicals, pharmaceutical products and other varied

products. It has been conducting this business since its inception as a New York corporation in

August of 1980. Dastech has been a law abiding member of the business community for 27

years. Dastech is a member of the Long Island Import Export Association, Inc.[3] and its import

---

[3] Since 1982, the Long Island Import Export Association, Inc. has offered seminars covering a
range of subjects focusing on key global issues. The goal is to help manufacturers, importers,
business owners and "start-up" companies expand their knowledge in the field of international
trade. Seminars are presented by accomplished and recognized professionals who offer their
insight about the business environment today and their personal views of the future. Speakers

manager, Luz Cazeneuve, has been an Association board member for several years and regularly

attends it monthly meetings. Ms. Cazeneuve also attends conferences relating to the importation

business.  Recent (2006) conferences of note attended by Ms. Cazeneuve include: a DEA

Chemical Industry Conference in Louisville, Kentucky and a FDA Import Seminar in Jamaica,

New York.  Ms. Cazeneuve also attends meetings of the JFK Airport Customs Brokers

Association.  In addition, every two years, Ms. Cazeneuve attends a three day training course

offered by the International Vessel Operators Hazardous Materials Association, Inc. in

connection with The International Maritime Dangerous Goods (IMDG) Code.  See Exhibit 1. -

Affidavit of Luz Caseneuve.

     2.     Pursuant to 21 U.S.C. § 957(a), Dastech is a DEA-registered importer of List 1

chemicals, specifically, Pseudoephedrine, Ephedrine, Phenylpropanolamine and Red

Phosphorous.  Dastech is registered by the United States Drug Enforcement Administration

("DEA") to import List 1 chemicals into the United States.  It possesses several registrations.

Each registration is linked to the public warehouse that physically warehouses the imported

product.  They are:

     a.     DEA Registration No. 001277DRX – Chemical Importer
     Dastech International Inc., c/o Hawks Express, Inc.
     1000 Frank E. Rogers Blvd.
     Harrison, New Jersey 07029
     *See* Exhibit 2. – Dastech DEA Registration Certificate No. 001277DRX

     b.     DEA Registration No. 005453DRX – Chemical Importer
     Dastech International, Inc.
     c/o Chicago Land Quad Cities
     7715 South 78th Ave.
     Bridgeview, IL  60455

---

are highly experienced in the fields of finance, sales, marketing, product development, legal
issues, U.S. Customs and all others relevant to conducting business in today's dynamic
environment.

*See* Exhibit 3. – Dastech DEA Registration Certificate No. 005453DRX

c.      DEA Registration No. 005452DRZ
        Dastech International, Inc.
        c/o Chicago Land Quad Cities
        77115 South 78th Ave.
        Bridgeview, IL 60455
        *See* Exhibit 4. - Dastech Registration Certificate No. 005452DRZ

d.      DEA Registration No.005799DRX
        Dastech International, Inc.
        c/o Coty Warehouse
        600 Richmond Terrace
        Staten Island, NY  10301
        *See* Exhibit 5. - Dastech Registration Certificate No. 005799DRX

3.      DIL possessed one DEA registration as a chemical distributor.  That registration was in the name "Dastech Industries, Ltd., c/o Hawks Express Inc., 1000 Frank E. Rogers Blvd., Harrison, NJ  07029"  Registration number 001285DNY was assigned to DIL.  *See* Exhibit 6. - Dastech Registration Certificate No. 001285DNY.

4.      On April 4, 2002, Dastech provided notice to the DEA of its intent to "centrally locate" its records relating to regulated transactions and that those records would be located and maintained at its principal place of business located at 10 Cutter Mill Rd., Suite 400, Great Neck, NY 11021.  The notice was submitted pursuant to 21 CFR § 1310.04(c).  *See* Exhibit 7. - Correspondence from Dastech to DEA, dated April 4, 2002.

5.       Approximately 15-20 years ago, Dastech began doing business with Hawks Express Inc. ("Hawks Express"), a New Jersey corporation, to warehouse its imports. Hawks Express Inc. is not a subsidiary or a related entity of Dastech.  The sole shareholder of Hawks Express is an individual named Neil Villacari.  Hawks Express has been warehousing Dastech's List 1 chemicals for the past five to six years.  In all of the years that Hawks Express has provided services for Dastech, there has never been a loss, shortage or damage to the List 1

chemicals imported by Dastech.    Furthermore, Mr. Villacari has stated in his Affidavit that he has never known Dastech or its employees to act in an unlawful, fraudulent or questionable manner and that he has a high respect for the business integrity of Dastech and its employees. *See* Exhibit 8. - Affidavit of Neil Villacari; *See* Exhibit 13. – Affidavit of Robert Kahen.

6.    On or about June 5, 2007, DEA Diversion Group Supervisor Richard Tilney ("Tilney") and Diversion Investigator William Salera came to Hawks Express to speak to Neil Villacari.  The investigators showed him their badges and stated that they were at Hawks Express to seize and destroy the Pseudoephedrine in the warehouse that was imported by Dastech.  The investigators informed Mr. Villacari, the owner of the Hawks Express Inc. warehouse, that he was illegally storing List 1 chemicals.  He was told that the illegality dealt with improper recordkeeping and that there were mistakes in the importation records.  The investigators told Mr. Villacari that as a result of the alleged problems in the records, Mr. Villacari could be criminally charged, convicted and subject to a 25-30 year prison term.  *See* Exhibit 8. - Affidavit of  Neil Villacari.

7.    At that same meeting on June 5, 2007, the investigators told Mr. Villacari that he had to sign two forms titled "Voluntary Surrender of List 1 Chemical Privileges,"  which purports to terminate Dastech's and DIL's DEA registrations to import and distribute  List 1 chemicals.  Investigator Tilney repeatedly insisted that Mr. Villacari sign the forms.  Despite his lack of authority to sign the Voluntary Surrender forms on behalf of Dastech and DIL, Mr. Vallacari signed the forms as a result of Tilney's accusations and threats.  *See* Exhibit 8. - Affidavit of Neil Villacari.

8.    At the same meeting on June 5, 2007, Tilney seized all of Hawks Express' paperwork relating to Dastech's transactions for 2007, a printout of an inventory of Dastech's

List 1 chemicals from January 2006 to June 5, 2007 and the DEA Certificates of Registration for Dastech and DIL. *See* Exhibit 8 - Affidavit of Neil Villacari.

9.    On June 5, 2007, Dastech had 10 drums of Pseudoephedrine and 319 drums of Red Phosphorous warehoused at Hawks Express.  Tilney told Mr. Vallacari that those List 1 chemicals could not be removed from the warehouse and that they were subject to seizure and destruction.  *See* Exhibit 8 - Affidavit of Neil Villacari.

10.    On June 21, 2007, DEA agents and other law enforcement personnel arrived at Hawks Express warehouse and seized all of the Pseudoephedrine at the warehouse.  They did not seize the Red Phosphorous but indicated that they would come back at a later date to seize the Red Phosphorous and that it would be destroyed.  Mr. Vallacari was later contacted by a U.S. Marshall who asked him if he knew of any entity that could destroy the Red Phosphorous.  Mr. Vallacari informed him that he did not know of any such entity.  *See* Exhibit 8. - Affidavit of Neil Villacari.

11.    Also on or about June 21, 2007, the DEA conducted seizures of Dastech's property, consisting of 40 drums of Pseudoephedrine and 26 drums of Phenylpropanolamine located at a United States Customs warehouse at 888 Doremus Ave., Newark, NJ 07114 and 40 drums of a List 1 chemical located at a United States Customs warehouse at 300 Western Avenue, Staten Island, New York 10303.

12.    On June 22, 2007, in response to a request by the undersigned counsel for a copy of the seizure warrant in connection with the June 21, 2007 seizures of Dastech's property, Tilney provided counsel with three documents titled "Application and Affidavit for Seizure Warrant" but not seizure warrants.  Furthermore, the affidavits in support were not attached.  The applications were based on the affiants belief that the property seized consisted of "property

imported, exported, distributed, possessed, or otherwise in violation of Title 21 United States Code, Section 801, *et seq.* and is subject to forfeiture pursuant to 21 United States Code, Section 881(a)(9)." *See* Exhibit 9. - Application for Seizure Warrant for Hawks Enterprise; *See* Exhibit 10. - Application for Seizure Warrant for 888 Doremus Ave., Newark, NJ; *See* Exhibit 11. - Application for Seizure Warrant for 300 Western Avenue, Staten Island, NY.

13.     All of the property seized by the DEA on or about June 21, 2007, was lawfully imported and possessed by Dastech.  The seizures were unlawful, a restraint of trade and harmful to the reputation and business of Dastech.   The loss in Dastech sales as a result of the seizures is approximately $235,430.00.  *See* Exhibit 12. - Affidavit of Robert Kahen.

14.     **The 40 drums of Pseudoephedrine seized from the U.S. Customs warehouse at 300 Western Avenue, Staten Island, New York 10303** were lawfully imported.  Dastech imported the product for its customer Hi-Tech Pharmacal Co., Inc., pursuant to purchase order 0041429, dated February 13, 2007.  *See* Exhibit 13. - Hi-Tech Pharmacal Co., Inc.  A DEA 486 – "Import Export Declaration" was completed by Dastech and submitted to the DEA on February 14, 2007.  *See* Exhibit 14.- Hi-Tech Pharmacal  486.  The DEA issued a DEA Control Number 5046178 for the transaction.  The 486 submitted in connection with this import contained an inadvertent error.  The 486 submitted was a prior version of the form (version Jun 1989).  In box 1b, the Customs' broker was identified as J.W. Hampton, Jr.;  in fact, J.M. Rodgers Co., Inc. was retained as the Customs' broker for the transaction.  This error is of no significance; Form 486 was revised in September of 2006 and the identity of the broker is no longer an element of the revised Form 486.  The new form must be used effective June 8, 2007. *See* Exhibit 15. - Revised Form 486 and Exhibit 16. - Instructions for Completing Revised Form 486.

15.    **The product seized from the U.S. Customs warehouse, 888 Doremus Avenue, Newark, NJ 07114** (aka "Salson Container Freight Services") was lawfully imported.  The 40 drums of Pseudoephedrine and 26 drums of Phenylpropanolamine identified as subject to seizure in the Application for Seizure Warrant,  were imported for four separate customers:

a.   Time-Cap Labs, ordered 40 drums of Pseudoephedrine pursuant to purchase order PO16982, dated March 8, 2007.  *See* Exhibit 17. - Time-Cap Purchase Order.  A DEA Form 486 – "Import Export Declaration" was completed by Dastech and submitted to the DEA on March 9, 2007. *See* Exhibit 18. - Time-Cap 486. The DEA issued a DEA Control Number 5046883 for the transaction.

b.   Contract Pharmakal ordered 5 drums of Phenylpropanolamine pursuant to purchase order 104015, dated April 10, 2007.  *See* Exhibit 19. - Contract Purchase Order.  A DEA Form 486 - "Import Export Declaration" was completed by Dastech and submitted to the DEA on April 12, 2007.  *See* Exhibit 20. - Contract 486.  The DEA issued a DEA Control Number 5047779 for the transaction.

c.   Gemini Pharmaceuticals, Inc. ordered 1 drums of Phenylpropanolamine pursuant to purchase order 113431, dated April 11, 2007.  *See* Exhibit 21.- Gemini Purchase Order.  A DEA Form 486 – "Import Export Declaration" was completed by Dastech and submitted to the DEA on April 12, 2007.  *See* Exhibit 22. - Gemini 486.  The DEA issued a DEA Control Number 5047779 for the transaction.

d.   Andapharm ordered 20 drums of Phenylpropanolamine pursuant to purchase order 200483, dated March 20, 2007.  *See* Exhibit 23. - Andapharm Purchase Order.  A DEA Form 486 – "Import Export Declaration" was completed by

Dastech and submitted to the DEA on April 10, 2007. *See* Exhibit 24.-

Andapharm 486. The DEA issued a DEA Control Number 5047654 for this

transaction.

16.    In regard to the transactions described in the foregoing subparagraphs a-d, the

486's contained an inadvertent error. The 486s submitted were a prior version of the form

(version Jun 1989). In box 1b, the Customs' broker was identified as J.W. Hampton, Jr.; in fact,

J.M. Rodgers Co., Inc. was retained as the Customs' broker for the transaction. This error is of

no significance; Form 486 was revised in September of 2006 and the identity of the broker is no

longer an element of the revised Form 486.

17.    **The 319 drums of Red Phosphorous seized from Hawks Express** were

lawfully imported. Dastech imported the product for its customer RSR Quemetco/Revere

Smelting & Refining, pursuant to purchase order 69108-043, dated March 21, 2007. *See* Exhibit

25. - RSR Purchase Order. A DEA Form 486 – "Import Export Declaration" was completed by

Dastech and submitted to the DEA on April 2, 2007. *See* Exhibit 26. - RSR 486. The DEA

issued a Letter of No Objection ("LONO") on April 20, 2007 and issued DEA Control Number

5047483 for the transaction. *See* Exhibit 27. - RSR LONO. The 486 was subsequently amended

and the transaction was given DEA Control Number 5049366. *See* Exhibit 28. - RSR Amended

486.

18.    **The 10 drums of Pseudoephedrine seized from Hawks Express** were lawfully

imported. These drums relate to three transactions:

a.    Pharmakon Labs. Inc. ordered 10 drums of Pseudoephedrine pursuant to

purchase order HH110306, dated November 3, 2006. *See* Exhibit 29.

Pharmakon Purchase Order.   A DEA Form 486 – "Import Export

Declaration" was completed by Dastech and submitted to the DEA on November 13, 2006. *See* Exhibit 30. - Pharmakon 486. The DEA issued a DEA Control Number 5043679 for the transaction. On approximately April 2, 2007, 2 drums were shipped by Dastech to Pharmakon Labs. *See* Exhibit 31. - Pharmakon Delivery Order. Eight drums of Pseudoephedrine ordered by Pharmakon were seized.

b.    The remaining 2 drums making up the 10 drums of Pseudoephedrine seized from Hawks Enterprise constitute a return of product from Sage Pharmaceutical. *See* Exhibit 32. - Sage Return Authorization.

19.    As a direct result of the seizure of Dastech's property, three of Dastech's customers have already cancelled purchase orders previously placed with Dastech. The first to cancel an order was Time-Cap, Labs, Inc. Time-Cap cancelled a purchase order for 1,000 kg of Pseudoephedrine on July 13, 2007. The loss in sales from that order totals $60,000.00. The second customer to cancel an order was Spectrum Chemicals and Laboratory Products. Spectrum cancelled a purchase order for 50 kg of Phenylpropanolamine on July 18, 2007. The loss in sales from that order totals $2,750.00. Finally, DSC Labs cancelled a purchase order for 25kg on July 19, 2007. The loss in sales from that order totals $2,000.00. *See* Exhibit 13. – Affidavit of Robert Kahen.; *See* Exhibit 12. - E-mail from Time-Cap to Dastech's Vice-President, Robert Kahen, dated July 13, 2007.

## LEGAL BACKGROUND

### I. Preliminary Injunction

A preliminary injunction is available in this Circuit when the Plaintiff demonstrates: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the

absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors a preliminary injunction. *Nat'l Treasury Employees Union v. United States,* 927 F.2d 1253, 1243 (D.C. Cir. 1991); *Sea Containers, Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989); *Wash. Metro. Area Transit Comm'n v. Holiday Tours,* 559 F.2d 841, 943 (D.C.Cir. 1977); *Va. Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir. 1958). A Plaintiff is not required to prevail under each of these factors; rather, "the factors must be viewed as a continuum, with more of one factor compensating for less of another." *Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20, 27 (D.D.C. 1997). Indeed, "[a] stay may be granted with either a high probability of success and some injury, or *vice versa*. *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F. 2d 972, 974 (D.C.Cir. 1985). In this case, however, each factor strongly favors the award of injunctive relief. *See also, Norman Bridge Drug Company v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976).

## II.  Due Process

The Fifth Amendment to the Constitution of the United States provides that no person may be deprived of life, liberty, or property without due process of law. The "fundamental requirement" of due process is the "opportunity to be heard at a meaningful time and in a meaningful manner." *Beverly Enterprises, Inc.  v. Herman,* 130 F. Supp. 2d 1, 17 (D.D.C. 2000)(citing *Mathews v. Eldridge*, 424 U.S. 219, 333 (1976). To establish an actionable due process claim, the plaintiff must show that "(1) it has a protected interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections." *PDK Labs Inc. v. Reno,* 134 F. Supp. 2d 24, 32 (D.C. Cir. 2001). *See also, Beverly Enterprises,* 130 F. Supp. 2d at 17 (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991); *Soeken v. Herman,* 35 F. Supp. 2d 99, 104-105 (D.D.C. 1999)).  In determining

how much protection is warranted, the court balances the following three factors: (1) the

plaintiff's protected interest that will be affected by the government's action; (2) the risk of

erroneous deprivation of the plaintiff's protected interest under the disputed procedures; and (3)

the government's interest. *Gilbert v. Homar,* 520 U.S. 924, 931-932 (1997)(quoting *Mathews v.

Eldridge*, 424 U.S. 319, 335 (1976)); *Beverly Enterprises,* 130 F. Supp. 2d at 17 (citing *Kropat v.

FAA*, 162 F.3d 129, 132-33 (D.C. Cir. 1998)).

In this case, the DEA has in its possession two "voluntary surrender" forms that were

executed by a non-authorized person and has stated its intent to destroy Dastech's property based

on these forms.  It is also likely that the seizure warrants that were used to seize Plaintiff's

property on June 21, 2007 were based on these coerced and improper surrenders.  This court has

acknowledged that even the temporary suspension of a constitutionally protected interest

amounts to a serious deprivation when the suspension (surrender) is permitted by statute to

remain in effect until the underlying matter is finally disposed of or terminated, *see Feinberg v.

FDIC,* 420 F. Supp. 109 (D.D.C. 1976), and several other courts have found the duration of any

potentially wrongful deprivation of a property interest an important factor in assessing the impact

of government action on a private interest.  Those courts have upheld the constitutionality of

temporary suspensions without a hearing when the relevant statutes or procedures provided for a

"prompt" post-suspension hearing.  *See Gilbert v. Homar,* 520 U.S. 924, 935 (1991); *Cf.,

Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 547 (1985).   The failure of a statute to

specify any time period for a post-suspension hearing has been found to be particularly

problematic and constitutionally infirm under the due process clause.  *Barry v. Barichi,* 443 U.S.

55, 66 (1979); *see also, Feinberg v. FDIC,* 420 F. Supp. 109 (D.D.C. 1976).  In this case, based

upon the so-called "voluntary surrenders" of Plaintiff's DEA registrations, the DEA does not

have to provide *any* process at all to Plaintiffs in order to interfere with Plaintiffs' constitutionally protected interests.

## ARGUMENT

The DEA investigators' intimidation and coercion in order to affect the "voluntary surrender" of Plaintiffs' DEA registrations and the subsequent seizure of their property constitutes egregious behavior that totally violates Plaintiffs' due process rights.

### A.      **Plaintiffs Are Substantially Likely to Succeed on the Merits**

Plaintiffs are likely to succeed on the merits of their due process and statutory claims. Plaintiffs have been denied "the fundamental requirement of due process," which is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Beverly Enterprises, Inc. v. Herman,* 130 F. Supp. 2d 1, 17 (D.D.C. 2000) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)). No pre-suspension hearing was provided (due to DEA intimidation resulting in a non-authorized person "surrendering" Plaintiffs' DEA registrations). No post-surrender process is required. The DEA has seized Plaintiffs' property, interfered with its business relations with its customers, and prevented Plaintiffs from doing business in the future, thereby subjecting Plaintiffs to the potential of multiple lawsuits from its customers and otherwise making a mockery of Plaintiffs' due process rights. This scenario cannot be countenanced by the laws and Constitution of this country.

Plaintiffs have constitutionally protected life, liberty and property interests and the procedures employed by the government deprived Plaintiffs of those interests without constitutionally adequate procedures. *Beverly Enterprises,* 130 F. Supp. 2d at 17 (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991); *Soeken v. Herman*, 35 F. Supp. 2d 99, 104-105 (D.D.C. 1999)).

First, Plaintiffs have a protected property interest in their DEA Certificates of Registration. *See Harline v. DEA*, 148 F. 3d 1199, 1204 (10th Cir. 1998) (noting that the DEA did not dispute that a licensed physician has a property interest in his DEA registration to prescribe controlled substances and a liberty interest in practicing medicine); *Ritter v. Cohen,* 797 F.2d 119, 122 (3rd Cir. 1986) (property interest in continued participation in state Medicaid program). Once a property interest has been created, that interest may subsequently be eliminated, but only pursuant to constitutionally adequate procedures. *See Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532 (1985).

The DEA granted Plaintiffs their registrations. Those registrations are of utmost importance to Plaintiffs' businesses because the importation and distribution of List 1 chemicals affects a significant percentage of Plaintiffs' business. Dastech cannot import List 1 chemicals without possessing valid DEA registrations. Plaintiffs may not be deprived of their property interests in their Certificates of Registration without due process.

Plaintiffs also have a "liberty interest in avoiding the damage to . . . [their] reputation and business[es] caused by a stigmatizing suspension." *PDK Labs Inc. v. Reno*, 134 F. Supp. 2d 24, 33 (D.D.C. 2001) (quoting *Reeve Aleutian Airways, Inc. v. United States,* 982 F.2d 594, 598 (D.C.Cir. 1993); *see also Harline v. DEA,* 148 F.3d 1199, 1204 (10th Cir. 1998). The harm to Dastech's reputation as a result of the unlawful seizures and spurious remarks made by DEA Inspector Tilney to third parties is profound, immeasurable at the present time and hopefully, not insurmountable provided immediate relief from this court.

Second, there is no doubt that the DEA has deprived and otherwise infringed Plaintiffs of their property interests by coercing non-authorized individuals to "surrender" their DEA Registrations and by seizing Dastech's property without service on Dastech of Seizure Warrants

19

and by relying on illegal "surrenders."  The DEA, in other words, may not defend against a due

process claim by arguing that the Plaintiff now lacks a protectable property interest by virtue of

the very action that Plaintiffs have challenged.  *See, e.g., Bennett v. Tucker*, 827 F.2d 63 (7th Cir.

1987) ("a state may not deprive an individual of his or her property interest without due process,

and then defend against a due process claim by asserting that the individual no longer has a

property interest.").  Any other rule "would allow the State to destroy at will virtually any

government-created property interest."  *Vitek v. Jones*, 445 U.S. 480 (1980).  Once the

government has created a property interest, the adequacy of the procedures employed to deprive

Plaintiffs of that interest must be judged in constitutional terms. *Vitek*, 445 U.S. at 490-91.

Finally, Plaintiffs will demonstrate that the deprivation of their property rights occurred

without the proper procedural safeguards or protections.  Due process clearly requires a prompt

post-suspension adjudication in cases where there has not been a pre-suspension hearing.  Based

on the DEA's actions in this case, there will be no such hearing.

The CSA has extensive, detailed statutes and regulations to insure that its registrants are

treated fairly and afforded due process.  The DEA's actions in practice, at least in this case,

undermine Congressional intent and are unconstitutional.  Rather than serving Plaintiffs with a

show cause order and commencing either a pre or post-suspension hearing, the DEA chose to

intimidate a non-authorized individual to "surrender" registrations so that no process need be

afforded at all.

### B.    Plaintiffs Will Suffer Irreparable Harm Without Injunctive Relief

The "surrender" of Plaintiffs' registrations threatens the very existence of Plaintiffs'

businesses.  The "surrenders" prohibit Plaintiffs from importing or selling List 1 chemicals to

anyone and misleadingly informs Plaintiffs long-standing customers that Plaintiffs must have

violated the CSA – without Plaintiffs ever being able to receive notice or contest whatever the DEA objects to. The purchase orders from Plaintiffs' customers total $235,000. As a direct result of the seizure of Dastech's property, three of Dastech's customers have already cancelled purchase orders previously placed with Dastech. The first to cancel an order was Time-Cap, Labs, Inc. Time-Cap cancelled a purchase order for 1,000 kg of Pseudoephedrine on July 13, 2007. The loss in sales from that order totals $60,000.00. The second customer to cancel an order was Spectrum Chemicals and Laboratory Products. Spectrum cancelled a purchase order for 50 kg of Phenylpropanolamine on July 18, 2007. The loss in sales from that order totals $2,750.00. Finally, DSC Labs cancelled a purchase order for 25kg on July 19, 2007. The loss in sales from that order totals $2,000.00.

Moreover, Plaintiffs may be irreparably harmed by these losses because the government is immune from certain damage suits. *See Woerner,* 739 F. Supp. At 650; *Wisconsin v. Stockbridge-Munsee Cmty.,* 67 F. Supp. 2d 990, 1019-20 (E.D. Wis. 1999); *Glendale Neighborhood Ass'n v. Greensboro Housing Auth.,* 901 F. Supp. 996, 1002 (M.D.N.C. 1995). Plaintiffs have suffered, and will continue to suffer, monetary loss on account of the DEA's actions, which they may never be compensated for. The repercussions of the "voluntary suspensions" are severe and should not be treated lightly.

Plaintiffs have also suffered grave harm to their reputations on account of the stigma associated with the unlawful seizures and dissemination of misleading and defamatory information to its customers and business associates.

Finally, the deprivation of a constitutional right "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976).

**C.    There Is No Cognizable Harm to Others**

The purported "voluntary surrenders" not only harmed Plaintiffs but they also harmed Plaintiffs customers who were depending on the receipt of the seized List 1 chemicals for their business and manufacturing schedules. On the other hand, DEA will suffer no cognizable harm as a result of an injunction.  Therefore, there is no harm to the public from the issuance of the requested injunction.

**D.    The Public Interest Strongly Favors Granting Injunctive Relief**

As a general matter, "there is a strong public interest in meticulous compliance with law by public officials."  *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993).  Whereas the DEA presumably will claim that there is a strong public interest in obtaining "voluntary surrenders," thereby enabling it to efficiently achieve its objectives without the inconvenience of the statutory and regulatory process, the overriding public interest is served by requiring an agency to act lawfully.  Other government agencies and persons who are subject to the CSA and applicable DEA regulations will benefit if the DEA is required to conduct its business in a fair and unbiased manner in accordance with the Constitution.  *See Woerner*, 739 F. Supp. At 650.

Injunctions also serve the public interest "by preserving the Plaintiffs' right to meaningful judicial review."  *Ugine-Savoie Imphy v. United States,* 24 Ct. Int'l Trade 1246, 1252, 121 F. Supp. 2d 684, 690 (Ct. Int'l Trade, 2000).  In this instance, Plaintiffs will be stripped of any meaningful judicial review because there need be any if a registrant validly surrenders its registrations and because the stigma of the *de facto* surrenders and the economic injuries to Plaintiffs' customers will be immediately crippling to this component of Plaintiffs' business.  An

22

injunction will prevent the potential catastrophic loss associated with the DEA's actions in this

case.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request the issuance of a Preliminary

Injunction in the form submitted with this Motion.

Dated:  July 20, 2007.

Respectfully submitted,

Janet Kravitz *
jkravitz@kravitzllc.com
KRAVITZ, BROWN & DORTCH, LLC
65 East State Street, Suite 200
Columbus, Ohio  43215
Tel:  614.464.2000
Fax:  614.464.2002

Max Kravitz*
mkravitz@kravitzllc.com
KRAVITZ, BROWN & DORTCH, LLC
65 East State Street, Suite 200
Columbus, Ohio  43215
Tel:  614.464.2000
Fax:  614.464.2002

Amy E. Richardson, DC Bar # 472284
Harris, Wiltshire & Grannis
1200 18th Street, NW
Washington, DC 20010
Tel: 202-730-1300
Fax: 202-730-1301

Attorneys for Plaintiff
Dastech International, Inc.

   * Pro hac vice motions for appearance pending.

## CERTIFICATE OF SERVICE

I hereby certify that on July __, 2007, a copy of the foregoing Plaintiff's motion for a

Preliminary Injunction and memorandum of Points and Authorities in Support of Plaintiff's

Motion for a Preliminary Injunction was served on each of the defendants, as well as the United

States Attorney for the District of Columbia, along with the Complaint.

_____
Lynsey Knowles