IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DASTECH INTERNATIONAL, INC. *et al.*, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) ) | Civil Action No. 1:07-CV-01296 (HHK) |
| ALBERTO GONZALES, *et al.*, | ) ) ) | |
| Defendants | ) ) | |

## CORRECTION TO ATTACHED DECLARATION OF RICHARD TILNEY, FILED JULY 24, 2007

I, Richard Tilney, pursuant to 28 U.S.C. § 1746, declare and say:

1. On July 24, 2007, I executed a declaration in the instant case, attached herein as Exhibit 21. In that declaration, which was filed with this Court on July 24, 2007, I stated the following:

> On March 28, 2007, DEA received a completed DEA Form 486 from Dastech c/o Hawks for 1000 kilograms of pseudoephedrine HCl. This shipment was imported into the United States along with 1000 kilograms of Phenylpropanolamine, also shipped pursuant to a DEA-486 submitted by Dastech c/o Hawks. A copy of both DEA forms 486 is attached herein as Exhibits 4-4a. Both DEA-486 forms listed the Customs Broker as J.W. Hampton.
>
> Based on information received by DEA, this shipment of phenylpropanolamine and pseudoephedrine was actually scheduled to be shipped to the Dastech New York location, an unregistered location. A copy of the CBP data is attached as Exhibit 5. Moreover, the CBP data shows an actual shipment of 66 drums which includes 40-25 kilogram drums of pseudoephedrine (1000 kg) and 26-50 kilogram drums of

FROM BETA                                                          (FRI) 8. 10' 07 18:30/ST. 18:29/NO. 4861391817 P 3

> phenylpropanolamine (1300 kg). However, the DEA-486 submitted by Dastech c/o Hawks shows a declaration of only 1000 kilograms of phenylpropanolamine, *leaving 300 kilograms undeclared.*

(Italics added). See Exhibit 21, p. 6. As set forth below, certain of these statements were incorrect.

2. Since the filing of that declaration, I received a copy of a third DEA form 486 ("DEA-486") completed by Dastech c/o Hawk's and filed with DEA. This third DEA-486 was provided to me on July 30, 2007, by J.M. Rodgers Co., the actual Customs Broker who handled the transactions described in paragraph 1 above. In that DEA-486, attached herein at Exhibit 20, Dastech c/o Hawk's declared a shipment of 240 kilograms of phenylpropanolamine with an estimated arrival date of May 30, 2007.

3. After receiving the DEA-486 from J.M. Rodgers Co., I conducted another search through documents which the Plaintiff previously provided to me on June 18, 2007. After conducting that search, I discovered that the Plaintiff has also provided me with a copy of the DEA-486 which referenced the shipment of 240 kilograms of phenylpropanolamine.

4. Based on the documents provided to me by both J.M. Rodgers Co. and the Plaintiff, it appears that a total of 1240 kilograms of phenylpropanolamine was imported in the shipment referenced above, and that the 1240 kilograms had been declared in *two separate* DEA-486 forms. Therefore, the allegation that Plaintiff failed to declare 300 kilograms of phenylpropanolamine was incorrect and is withdrawn. This allegation was also made in an affidavit submitted by DEA Diversion Investigator William Salera as part of an Application for Seizure Warrant, filed June 21, 2007, in the United States

2

District Court, District of New Jersey. DEA is currently taking appropriate measures to correct that error as well.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that I have read the foregoing declaration and that the same is true and correct.

*[signature]*

Richard J. Tilney
Group Supervisor
Office of Diversion Control
New Jersey Division

Executed this 10th day of August, 2007 at Newark, New Jersey.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DASTECH INTERNATIONAL, INC. )<br>*et al.*, )<br>          Plaintiffs )<br>)<br>v. )<br>)<br>)<br>ABERTO GONZALES, *et al.*, )<br>)<br>          Defendants )<br>_____ ) | Civil Action No. 1:07-CV-00191<br>(RMU) |

### DECLARATION OF RICHARD TILNEY

I, Richard Tilney, pursuant to 28 U.S.C. § 1746, declare and say:

1. I am a Group Supervisor in the Office of Diversion, Neward, New Jersey Office, Drug Enforcement Administration. My responsibilities include the prevention, detection, and investigation of the diversion of listed chemicals and controlled substances from legitimate channels under the Controlled Substances Act. This includes reviewing DEA Forms 486 (Import/Export Declarations). I have served in my current capacity at the Newark Office since March 4, 2003, and have been a Diversion Investigator since July 5, 197. I was hired by DEA as a Diversion Investigator in 1997 and attended the Basic Diversion Investigator School at the DEA Academy in Quantico, Virginia. I have also received additional training at numerous classes administered both by the DEA and by non-DEA entities between 1974 and present. These courses familiarized me with matters involving chemical diversion to the illicit manufacture of methamphetamine, and



the adverse environmental impact that results from this process. Prior to my current position, I was a Staff Coordinator for the DEA in the Operations Enforcement Dangerous Drugs and Chemical Section (OED) at DEA Headquarters, Arlington, Virginia. As part of my duties I conduct regulatory investigations involving manufacturers, distributors, pharmacies, practitioners, and other handlers of controlled substances and listed chemicals. I further instructed law enforcement agencies in foreign nations regarding the methods of diversion used by illicit traffickers. Prior to this, I was a Diversion Investigator in the DEA New Jersey Division and was primarily responsible for preventing, detecting and investigating the diversion of controlled substances and listed chemicals from legitimate channels to illicit traffic. I have also provided investigative assistance in criminal and civil actions involving the diversion of imported list 1 chemicals and chemicals diverted to the illicit market. The primary emphasis of most of these investigations has involved pseudoephedrine (also known as pseudoephedrine HCl), ephedrine, phenylpropanolamine, and red phosphorus products. I have also worked in the regulatory process of List I chemical handlers to include pre-registrant investigations, regulatory investigations, and administrative actions taken against regulated firms.

The following information is based on my personal knowledge and/or information gained in the course of my official duties.

2.  List I chemicals are legitimate chemicals that also may be used in the illicit manufacture of a controlled substance in violation of the Controlled Substances Act, 21 U.S.C. § 802 (34), 21 CFR § 1310.02(a). Ephedrine, pseudoephedrine,

phenylpropanolamine, and red phosphorus are List I chemicals which are commonly used to illegally manufacture methamphetamine, a Schedule II controlled substance. These chemicals have been specifically designated by the Administrator of the Drug Enforcement Administration (DEA Administrator) as four of the listed chemicals subject to the provisions of 21 CFR §§ 1309 and 1313. *See* 21 CFR § 1310.02 (a).

3. Pursuant to 21 U.S.C. § 971 (c) and 21 CFR § 1313.41 (a), the DEA Administrator has the authority to suspend any importation or exportation of ephedrine, pseudoephedrine, phenylpropanolamine, or red phosphorus based on evidence that the chemical proposed to be imported or exported may be diverted to the clandestine manufacture of a controlled substance.

4. The United States has implemented a system by which every regulated person who imports a listed chemical is required to notify the DEA Administrator of the importation not later than 15 days before the importation is to take place. *See* 21 CFR § 1313.12 (a). Unless the notice requirement is waived, the regulated person must complete a DEA Form 486 and deliver it to DEA not later than 15 days prior to the importation. *See* 21 U.S.C. § 971 (a); 21 CFR § 1313.12 (b). The DEA Form 486 must include, among other things, name and address information about the chemical importer and/or broker, the name and description of each listed chemical, the amount of chemical to be shipped, the proposed import date, the foreign port of exportation, and the United States Customs Port of Entry. *See* 21 CFR § 1313.13 (c).

3

5. Currently, there is no statutory definition of "evidence that the chemical proposed to be imported may be diverted to the clandestine manufacture of a controlled substance." However, through prior adjudication, DEA and the courts have approved the use of a "totality-of-the-circumstances test" to decide whether substantial evidence exists to suspend an importation of List I chemicals. *See PDK Laboratories, Inc. v. United States Drug Enforcement Administration*, 438 F.3d 1184, 1194 (D.C. Cir. 2006); *Indace, Inc., Suspension of Shipments*, 69 Fed. Reg. 67,951, 67,959 (Nov. 22, 2004).

6. Moreover, the Attorney General considers the following factors to determine whether a regulated person, such as the Plaintiff, shall receive a registration to distribute List I chemicals. *See* 21 U.S.C. § 823 (h) which provides that the "Attorney General shall consider--

(1) maintenance by the applicant of effective controls against diversion of listed chemicals into other than legitimate channels;

(2) compliance by the applicant with applicable Federal, State, and local law;

(3) any prior conviction record of the applicant under Federal or State laws relating to controlled substances or to chemicals controlled under Federal or State law;

(4) any past experience of the applicant in the manufacture and distribution of chemicals; and

(5) such other factors as are relevant to and consistent with the public health and safety."

4

7.      On February 15, 2007, DEA received a completed DEA Form 486 from Dastech International, Inc c/o Hawks Express, Inc., 1000 Frank E. Rodgers Boulevard, Harrison, New Jersey. ("Dastech c/o Hawks"). (Exhibit ("Ex.") 1. On the form, Dastech c/o Hawks declared it intended to import 1000 kilograms of pseudoephedrine HCl to its registered location at 1000 Frank E. Rodgers Boulevard, Harrison, New Jersey. (DEA Control No.: 5046178). Dastech c/o Hawks listed J.W. Hampton Jr., Jamaica, New York, as the United States Customs broker.

This information, however, contradicted information received by the United States Customs Border Protection (CBP), and attached herein as Exhibit 2. According to CBP, the shipment of pseudoephedrine was actually being imported to Vanguard Logistics or NACA Logistics, 300 Middlesex Avenue, Carteret, New Jersey ("Vanguard location"), an unregistered location. Additionally, the actual U.S. Customs Broker was not J.W. Hampton, Jr., but J.M Rodgers. *Id.* Finally, the CBP data showed that the shipment was ultimately destined for Dastech's New York location at 10 Cuttermill Road, Great Neck, New York. ("Dastech New York location"). This is also an unregistered location. *Id.*

The CBP data was further confirmed by Vanguard's own "Arrival Notice and Invoice," attached herein as Exhibit 3. That document also shows the shipment was destined for Vanguard Logistics in Carteret, New Jersey, an unregistered location. Moreover, on May 18, 2007, I contacted Vanguard Logistics and spoke with Yolanda Fullman and Melissa Sansone, Vanguard's Import Manager. Ms. Fullman forwarded copies of the Arrival Notice and Invoice for the shipment listed in DEA 486 (Shipment #

5

5046178). The document did not identify Dastech c/o Hawk's as being involved with this import. Exhibit 3.

Because both the Vanguard location and the Dastech New York location are not registered locations, a shipment of pseudoephedrine to either location would be in violation of 21 U.S.C. 843 (a)(9), 21 C.F.R. 1309.21, and 21 C.F.R. 1309.23.

8. On March 28, 2007, DEA received a completed DEA Form 486 from Dastech c/o Hawks for 1000 kilograms of pseudoephedrine HCl. This shipment was imported into the United States along with 1000 kilograms of Phenylpropanolamine, also shipped pursuant to a DEA-486 submitted by Dastech c/o Hawks. A copy of both DEA forms 486 is attached herein as Exhibits 4-4a. Both DEA-486 forms listed the Customs Broker as J.W. Hampton.

Based on information received by DEA, this shipment of phenylpropanolamine and pseudoephedrine was actually scheduled to be shipped to the Dastech New York location, an unregistered location. A copy of the CBP data is attached as Exhibit 5. Moreover, the CBP data shows an actual shipment of 66 drums which includes 40-25 kilogram drums of pseudoephedrine (1000 kg) and 26-50 kilogram drums of phenylpropanolamine (1300 kg). However, the DEA-486 submitted by Dastech c/o Hawks shows a declaration of only 1000 kilograms of phenylpropanolamine, leaving 300 kilograms undeclared.

Additionally, a review of CBP paperwork and information obtained by DEA revealed that both shipments were being handled by Sal/Son Trucking, 888 Doremus Avenue, Newark, New Jersey. This location is also not registered to handle List I chemicals.

9. The owner of Hawk's Express, Neil Villacari, was asked about the shipments of pseudoephedrine and phenylpropanolamine described in paragraph 8. Mr. Villacari told investigators that he was not involved with these imports and had received no information from Dastech regarding these imports even though his company was listed as the importer.

10. On April 20, 2007, I contacted J.W. Hampton, Jr. and Company, and spoke to Maureen Shoule about the above listed imports and the fact that her company was listed as the U.S. Customs broker. Ms. Shoule advised that her company was not involved with the above listed imports and had not filed any documents with the U.S. Customs Service for the importation of pseudoephedrine or phenylpropanolamine.

11. On June 5, 2007, DEA spoke to Neil Villacari, owner of Hawk's Express, and requested documentation pertaining to shipments of pseudoephedrine and phenylpropanolamine to Sal/Son Trucking located at 888 Doremus Avenue, Newark, New Jersey. Mr. Villacari was also asked to provide documentation relating to the shipment of 1000 kilograms of pseudoephedrine (DEA Control No.: 3046178; referred to in Paragraph 7 of this affidavit). Mr. Villacari stated he had no documentation for either shipment.

As a result of allegedly false documentation showing that imports of pseudoephedrine and phenylpropanolamine were being consigned and shipped to Hawk's Express without Mr. Villacarri's prior knowledge, and the fact that the imports were

7

never shipped, and apparently were not intended to be shipped, to Hawk's Express, Mr. Villacarri told DEA he no longer desired to handle List I chemicals for Dastech. Accordingly, Mr. Villacari voluntarily surrendered his DEA registration by signing two DEA Forms 104c. Copies of each signed form are attached herein as Exhibit 6 and 6a. Mr. Villacarri was not threatened with any action against him in the event he failed to surrender his DEA registration. Nor were any promises made to Mr. Villacari in exchange for surrendering the DEA registration.

Prior to surrendering the DEA registration, Mr. Villacari never indicated that he did not have authority to surrender the registration. Also, up until the filing of this lawsuit, neither Mr. Villacari nor any other representative or agent of Dastech complained that the surrender of the DEA registration was invalid or without authority or apparent authority.

12. Dastech International, Inc. has previously been cited by DEA for the same violations listed above. For instance, on June 6, 2002, DEA sent a letter to Ms. Luz Cazeneuve of Dastech, advising her that Dastech filed DEA forms 486, listing an unregistered location as the destination of the List I chemicals to be imported. A copy of the letter is attached herein as Exhibit 7.

13. Dastech has also been the subject of a previous DEA investigation. Ms. Luz Cazeneuve was investigated for filling false or fraudulent information with DEA to obtain an import authorization for 4500 kilograms of pseudoephedrine. The shipment identified the receiving company as RP Scherer. RP Scherer advised DEA that it had

8

never ordered any pseudoephedrine from Dastech. As a result, Ms. Cazeneuve was advised that providing false statements or filing fraudulent information when applying for an import authorization could constitute a criminal offense. See 21 U.S.C. 843(a)(4)(A).

14. On September 24, 2004, DEA's Los Angeles Division conducted a regulatory inspection on Dastech International's registered location, c/o Admiral Transportation, 300 N. Baldwin Park Blvd., City of Industry, California. After being confronted with evidence that Dastech was in violation of state and federal regulations, Admiral surrendered its DEA registration.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that I have read the foregoing declaration and that the same is true and correct.

Richard V. Tilney
Group Supervisor
Office of Diversion Control
New Jersey Division

Executed this 24th day of July, 2007 at Newark, New Jersey.

9