UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DASTECH INTERNATIONAL, INC., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>PETER D. KEISLER, *et al.*,<br><br>　　　　Defendants. | Civil Action 07-01296 (HHK) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, TO TRANSFER OR FOR SUMMARY JUDGMENT**

I. **Introduction.**

　　Defendants have failed to demonstrate that the instant proceedings should be dismissed or that Defendants are entitled to summary judgment or a change of venue. Plaintiffs' claims are not moot, and numerous genuine issues of material fact continue to exist in this case. Further, venue for this action is properly situated in this District pursuant to 28 U.S.C. § 1391(e)(1).

II. **Dismissal for Mootness or for Failure to State a Claim or, in the Alternative Motion for Summary Judgment.**

　　A. **Exhaustion of Administrative Remedies.**

　　First, it is irrelevant to the outcome of the instant action, and to any mootness or summary judgment issue, whether Plaintiffs ever sought return of their DEA Certificates of Registration ("DEA registrations") prior to the filing of the instant action. Plaintiffs

1

have not failed to exhaust available administrative remedies regarding the disposition of their DEA registrations because no administrative remedies exist to contest the validity of a voluntary surrender.[1]  Therefore, the instant action is the appropriate device by which to contest the validity of a valid voluntary surrender.  *See also Page v. Bruce*, No. 1:02cv141DAK, 2004 WL 724477 (D. Utah 2004) (hearing the merits of an action brought by a registrant to contest the validity of the "voluntary" surrender of his DEA registration).

> **B.    Plaintiffs' Due Process Claims Continue to Demonstrate a Live Case or Controversy.**

Second, this case continues to present a live case or controversy regarding Plaintiffs' due process claims as detailed in Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Plaintiffs' Reply" [Doc. 19]).  Specifically,

---

[1] At oral argument in these proceedings, the Government represented that administrative procedures do exist to contest the validity of a voluntary surrender of a DEA registration.  No such procedure, however, is to be found within the CSA or its related regulations.  In fact, neither do the CSA nor its related regulations even contain the words "voluntary surrender."  The CSA and its related regulations do provide procedures to contest **other classes** of property deprivations—but these property deprivations are completely unrelated to an invalid voluntary surrender.  For example, 21 C.F.R. § 1313.41 and 21 U.S.C. § 971(c) provide a procedure to contest the DEA's suspension of a **single shipment** of listed chemicals.  These sections, though, provide no procedure to contest the validity of a voluntary surrender of a DEA **registration**.  Instead, these provisions allow the DEA to suspend a particular shipment of a listed chemical, without having to proceed against a registrant's DEA registration.  *See id.*; *see also Indace, Inc., c/o Seegott, Inc.; Malladi, Inc.; Suspension of Shipments*, 69 FR 67951-03, 2004 WL 2639818 (Nov. 22, 2004) (providing an example of the application of 21 C.F.R. § 1313.41).  The section does not even refer to a "DEA Certificate of Registration."  Indeed, in the past the DEA has recognized that 21 C.F.R. § 1313.41 was meant only "to provide for the interdiction of imports and exports of listed chemicals," *see Chemicals for Research & Industry v. Thornburgh*, 762 F. Supp. 1394, 1397 (N.D. Cal. 1991), not to create procedures to contest the validity of a voluntary surrender.

At oral argument, the Government also insinuated that a registrant can contest the validity of a voluntary surrender by writing the DEA Deputy Administrator.  If such a procedure were to exist, it would have to be found either in the U.S.C. or the C.F.R.; however, it is not.  If the DEA somehow interprets 21 C.F.R. § 1313.41 to afford an opportunity to contest the validity of a DEA registration after it has been invalidly surrendered, such a procedure is a matter of grace and not one of due process.

Plaintiffs are likely to show that the DEA violated their right to due process by depriving them of protected property and liberty interests without any notice or opportunity for a hearing. While Defendants have given lip service to their recognition of Plaintiffs' DEA registrations, they have not returned the registrations, which is a prerequisite for the handing of listed chemicals. *See* 21 C.F.R. § 1309.23(a). Furthermore, in the absence of injunctive relief Defendants are free to return to their old ways at any time.

On June 4, 2007, Plaintiffs possessed DEA registrations, permitting them to import and distribute listed chemicals. On June 5, 2007, Plaintiffs did not have DEA registrations even though Plaintiffs never validly surrendered their registrations. Today, Defendants recognize the continued validity of Plaintiffs' registrations. Tomorrow, there is nothing to stop the DEA from again asserting Plaintiffs' DEA registrations are terminated. Indeed, the DEA's actions counsel that it seeks to engage in just that behavior.

Regarding the initial deprivation, the DEA never issued Plaintiffs a show cause order or notice of immediate suspension, the normal administrative procedures by which a DEA registration is revoked or suspended. *See* 21 C.F.R. § 1301.36. Instead, the DEA coerced Mr. Villacari, who no legal authority with which to "voluntarily" surrender Dastech's DEA registrations, into "surrendering" them. (*See* Plaintiffs' Reply, Section I(A)(1).) The DEA provided no pre-deprivation or post-deprivation process to Plaintiffs. It simply asserted, and continues to assert, that an independently owned warehouse from which registrants rent space have standing to surrender the registrant's registration. (*See* Defendants' Opposition to Motion for Preliminary Injunction, at 2–3.) These actions were clearly a violation of Plaintiffs' right to due process.

3

In fact, the DEA's own behavior demonstrates that even it realizes a registrant is not provided due process of law when the registrant's independently owned warehouse surrenders its registrations. On June 6, 2007, precisely one day after DI Tilney had obtained "Dastech's" "voluntary" surrender from Mr. Villacari, DI Tilney contacted a true Dastech employee, Luz Cazeneuve, by email. (Cazeneuve 2d Aff. ¶¶ 13 [Doc. No. 19, Attachment #26]; *see also* DeGregorio Aff. [Doc. No. 19, Attachment # 6] (corroborating that Mr. Villacari's surrender of Dastech's DEA Registration was anything but "voluntary"); Levine Aff. [Doc. No. 19, Attachment #7] (same).) In this email, DI Tilney requested that Ms. Cazeneuve sign two DEA Form 104s that were electronically attached to the email. (Cazeneuve 2d Aff. ¶ 13.) DI Tilney's email also requested that Ms. Cazeneuve immediately fax the signed DEA Form 104s to him and return the signed originals via overnight express. *Id.*

Later on the same day, Ms. Cazeneuve received a facsimile from DI Tilney. *Id.* at ¶ 14. This facsimile contained a cover sheet and two DEA Form 104s. *Id.* The instructions on the cover sheet largely mirrored those contained in DI Tilney's email from earlier in the day—Ms. Cazeneuve was directed to sign the two DEA Form 104s, immediately fax the signed forms to DI Tilney, and then overnight the signed originals to his office. *See id.* Knowing how critical Dastech's DEA registrations are to Dastech's continued operation and knowing that Dastech had done nothing wrong, Ms. Cazeneuve refused to follow DI Tilney's orders to sign the forms. *See id.* at ¶ 6. Then, on June 7, 2007, Ms. Cazeneuve received a call from DI Tilney. *Id.* at ¶ 7. He requested that Ms. Cazeneuve come into his office in New Jersey the following day to

4

discuss the voluntary surrender of Dastech's DEA Certificates of Registration. *Id.* Ms. Cazeneuve again refused. *Id.*

The import of DI Tilney's actions cannot be ignored. If DI Tilney believed that he had obtained a valid voluntary surrender of Dastech's DEA registration from Hawks Express, there was no reason to require a Dastech employee to execute another set of Form 104s. DI Tilney's actions show that he was aware Hawks Express did not have the authority to surrender Dastech's DEA registrations. Further, Dastech never manifested any intent to voluntarily surrender its DEA registrations as Ms. Cazeneuve continually refused to follow DI Tilney's orders to surrender Dastech's registrations. Thus, DI Tilney must have known that Mr. Villacari's execution of the DEA Form 104s was void *ab initio*.

Because Mr. Villacari had no authorization to surrender the Dastech's DEA registrations, the DEA's assertion that Mr. Villacari's surrender of those registrations was valid is incorrect. Instead, due process required that Dastech be given notice and a meaningful opportunity for a hearing before the DEA could revoke or suspend its DEA registrations, which are recognized property interests. *See, e.g., Harline*, 148 F. 3d at 1204. Because the DEA had fulfilled neither deprivation prerequisite, it violated Dastech's right to due process of law by terminating Dastech's DEA registrations.

Plaintiffs also suffered a cognizable deprivation of a liberty interest when the DEA terminated their registrations. This circuit has found a deprivation of a liberty interest exists where, for example, the government has alleged that a contractor suffers from a conflict of interest, which resulted in the contractor not receiving future government contracts. *Conset Corp. v. Community Services Admin.*, 655 F.2d 1291, 1296–98 (D.C.

5

Cir. 1981); *see also Old Dominion Dairy Products, Inc. v. Sec. of Defense*, 631 F.2d 953, 955–56 (D.C. Cir. 1980) (holding that "when the Government effectively bars a contractor from virtually all Government work due to charges that the contractor lacks honesty or integrity, due process requires that the contractor be given notice of those charges as soon as possible and some opportunity to respond to the charges before adverse action is taken").

Plaintiffs' situation is analogous to that of the contractors in *Old Dominion* and *Conset*. Plaintiffs' DEA registrations were terminated through the DEA's coercive actions. The termination of Plaintiffs' DEA registrations was a change in Plaintiffs' status: On June 4, 2007, Plaintiffs were DEA registered listed chemical handlers—on June 5, 2007, Plaintiffs were barred from handling listed chemicals until the DEA's August 3, 2007, letter. This deprivation and change in status occurred without any notice or an opportunity for a hearing.

Further, the DEA's actions have stigmatized Plaintiffs as entities that are not to be trusted with the handling of chemicals for which legitimate uses exist. *See Chemicals for Research & Industry*, 762 F. Supp. at 1396 (holding "[o]ne who is labeled not worthy of being trusted with common chemicals that have both legitimate and illegitimate uses is severely stigmatized and . . . would appear to be entitled to some sort of notice and hearing"). As a result of this stigmatization, Plaintiffs' clients cancelled contracts with them, just as the plaintiffs in *Old Dominion* and *Conset* lost future contracts due to the government's stigmatization of their business practices. See *Conset*, 655 F.2d at 1296–98; *see also Old Dominion*, 631 F.2d at 955–56; Robert Kahen Aff. ¶ 7 [Doc. No. 19, Attachment #7]. Thus, Plaintiffs demonstrated that a

6

change in status—from a registrant to a nonregistrant, stigmatized Plaintiffs, thereby causing them present and possible future irreparable. Such a showing is that sort of "plus" that the U.S. Supreme Court requires to find the deprivation of a liberty interest. *See Paul v. Davis*, 424 U.S. 693 (1972). Indeed, unless this Court grants injunctive relief, Plaintiffs' reputation will continue to be damaged.

Moreover, Plaintiffs' due process claims against Defendants present a live case or controversy because Defendants have yet to return Plaintiffs' DEA registrations to them. Until Plaintiffs are in possession of their registrations, they cannot lawfully import or distribute controlled substances. 21 C.F.R. § 1309.23(a). The DEA's failure to return Plaintiffs' DEA registration has the same effect as a formal termination of those registrations. The only difference is that Plaintiffs have been accorded no post- or pre-deprivation process. Thus, the same controversy as was presented this Court in Plaintiffs' Complaint persists.

Even if Plaintiffs' DEA registrations are promptly returned, however, Defendants' continuing recognition of the validity of Mr. Villacari's "voluntary surrender" presents a live case or controversy under the voluntary cessation doctrine. The doctrine provides that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case . . . ." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). Instead, a case only "become[s] moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

The DEA's letter dated August 3, 2007, fits neatly within the voluntary cessation doctrine. The letter does recognize the current validity of Plaintiffs' DEA registrations, but fails to concede that Mr. Villacari's "surrender" of those registrations was invalid.

Moreover, the DEA has yet to return Dastech's DEA registrations to it, a behavior which demonstrates a reasonable expectation that the DEA will again decide not to honor Plaintiffs' DEA registrations.  In the absence of an injunction, therefore, there is nothing to prevent Defendants from again asserting that Plaintiffs' DEA registrations were terminated when Mr. Villacari "surrendered" them.  Therefore, Plaintiffs' Reply also demonstrates that Plaintiffs' due process claims continue to present a live case or controversy.

### C. **Plaintiffs Have Stated a Claim upon Which Relief May Be Granted vis-à-vis Their Due Process Claims.**

Third, Defendants provide no argument or law to support their contention that Plaintiffs have failed to state a claim upon which relief can be granted vis-à-vis their due process claims.  Plaintiffs have properly asserted claims under the Due Process Clause of the Fifth Amendment and the voluntary cession doctrine as detailed above.  Therefore, it is inappropriate to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6).

### D. **Plaintiffs' Conversion Claims Continue to Demonstrate a Live Case or Controversy and State a Claim upon Which Relief May Be Granted.**

Fourth, Defendants present no factual or legal argument as to why Plaintiffs' conversion claims should be dismissed under Fed. R. Civ. P. 12(b)(6).  The DEA now concedes that it mistakenly alleged that Plaintiffs had failed to account for three hundred kilograms of pseudoephedrine.  Correction to Attached Declaration of Richard Tilney, ¶ 2–4 [Doc. No. 16].  Thus, the primary fact demonstrating probable cause to seize Plaintiffs' listed chemicals was a mistake, a recklessly false allegation.  (*See* Plaintiffs' Reply at 3–28.)  Therefore, the DEA's seizure of Plaintiffs' listed chemicals was without

probable cause, thereby effecting a conversion. *See id.* Further, Plaintiffs demonstrate in their Reply that their conversion claims are not moot. (*See* Plaintiffs' Reply at 28–29.) Thus, it is inappropriate to dismiss Plaintiffs' conversion claims pursuant to either Fed. R. Civ. P. 12(b)(1) or 12(b)(6).

    **E.**   **Defendants Have Not Demonstrated That They Are Entitled to Summary Judgment.**

Finally, Defendants provide no argument as to why they are entitled to summary judgment. Insofar as Defendants' Opposition might contain such arguments, Plaintiffs' Reply defeats those arguments. Moreover, as demonstrated in Plaintiffs' "Statement of Genuine Issues of Material Fact," filed contemporaneously with this pleading, numerous genuine issues of material fact continue to exist. Therefore, Defendants are not entitled to summary judgment on either Plaintiffs' due process or conversion claims.

**III.**   **Dismissal for Improper Venue.**

Defendants fail to establish that this action should be dismissed for improper venue because Plaintiffs properly pled venue pursuant to 28 U.S.C. § 1391(e)(1). That statute provides that:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may . . . be brought in any judicial district in which (1) a defendant in the action resides . . . .

28 U.S.C. § 1391(e)(1).

Defendants first cite to *Cameron v. Thornburgh* to support their contention that venue is improper in this Court. 983 F.2d 253 (D.C. Cir. 1993). In analyzing 28 U.S.C. § 1391(e), however, the *Cameron* Court noted that "[b]ecause [the] Attorney General . . . lived in the District of Columbia, the [lower] court correctly concluded that

9

venue w[as] proper in this district *for the injunctive claim*," although the court incorrectly concluded that section 1391(e) provided venue for the *Bivens* claim. *Id. at* 257, 257 n.2. Thus, the only reason venue was improper in *Cameron* was because the underlying claim in that case was a *Bivens* action. *Id.* at 257. Because government officials are necessarily named in their private rather than official capacities in *Bivens* actions, a *Bivens* action fails to fulfill 28 U.S.C. § 1391(e)'s requirement that U.S. officials be sued in their official capacity. *See id.* Plaintiffs make no claim that Defendants acted outside the scope of their official capacity in recognizing the validity of Mr. Villacari's surrender of Plaintiffs' DEA registration or in their seizure of Plaintiffs' listed chemicals. Instead, Plaintiffs have brought an injunctive action against Defendants in their official capacities. Therefore, *Cameron* supports the proposition that venue is proper in this District.

Second, *Lamont v. Haig*, also cited in Defendants' Motion to Dismiss, supports the proposition that venue is proper in this Court. 590 F.2d 1124, 1127–28 (D.C. Cir. 1978). *Lamont* notes that "reside" as used in 26 U.S.C. § 1391(e)(1) is intended to mean the official residence of the defendant, that is, the place where the defendant performs his or her official duties. *Id.* at 1127–28. It does not mean the defendant's personal residence. *Id.* Defendants can hardly contend that the Acting Attorney General does not perform his official duties in the District of Columbia. Further, Plaintiffs' Complaint makes clear that the DEA Administrator and the Acting Attorney General are being sued in their official capacities, and, as such, are being sued for their actions taken under the color of legal authority. Indeed, "[s]ection 1391(e), fully analyzed, emerges as a provision according federal agencies and servants special treatment for venue purposes[,] treatment unlike that extended to any other litigant."

10

590 F.2d at 1129. Thus, venue is proper in this district under 28 U.S.C. § 1391(e)(1), and it is inappropriate to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3).

### IV. Transfer of Venue.

Defendants also fail to demonstrate that transfer of venue to the District of New Jersey is warranted in this case. Transfer of venue is only permissible where the defendant demonstrates that (1) venue is appropriate in the proposed transferee court and (2) "considerations of convenience and the interest of justice weigh in favor of transfer to that court." *FC Inv. Group LC v. Lichtenstein (*D.D.C. 2006), 441 F. Supp. 2d 3, 13–14. In addition, a plaintiff's choice of venue is entitled to great deference. *Id.* at 14.

Assuming venue would have been proper in the District of New Jersey, Defendants still fail to demonstrate that transfer is convenient and in the interest of justice. First, all Defendants are located in the Washington D.C. area, demonstrating it is most convenient to Defendants to maintain this action in this Court. Second, several witnesses for this case are not found in New Jersey, including a red phosphorus broker, Plaintiffs' vice president, and Plaintiffs' import manager. (*See* Plaintiffs' Reply at 30, 35.) Third, a majority of the documents relevant to this case are not located in New Jersey. (*See* Plaintiffs' Reply at 9.[2])

Fourth, "even if, as Defendants contend, many of the wrongful acts did occur outside of the District of Columbia, Defendants have not pointed to the existence of any factors that would cause them to experience extreme hardship in accessing evidence if venue were not transferred," demonstrating transfer is inappropriate *See FC Inv. Group*

---

[2] Plaintiffs have repeatedly stated that they elected to keep their DEA-related records at their central headquarters in Great Neck, New York, as clearly permitted by the CSA. *Id.*

*LC*, 441 F. Supp. 2d at 13.  Further, "[w]hen analyzing the convenience of parties and witnesses, a defendant must show that witnesses would be unwilling to testify in the District of Columbia" to be entitled to transfer.  *Id.* at 14.  Moreover, "to support its request for transfer under section 1404(a), a moving party must demonstrate . . . what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction."  *Id.* (quoting *Thayer/Patricof Educ. Funding LLC v. Pryor Res.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002)).  Defendants have made none of these showings here.

As to the interest of justice factor, Plaintiffs have made no argument whatsoever that transfer to the District of New Jersey would be in the interest of justice.  As this case is to be tried under federal rather than state law, there is no reason why venue in the District of New Jersey is preferable to venue in this District.  *See id.*  Therefore, transfer of venue pursuant to 28 U.S.C. § 1404(a) is improper.

Finally, because venue is proper in this District as demonstrated above, transfer pursuant to 8 U.S.C. § 1406(a) is inappropriate.

## **CONCLUSION**

For the reasons stated above, Plaintiffs request that this Court deny Defendants' Motion to Dismiss or, in the Alternative, to Transfer or for Summary Judgment.

Dated:  October 19, 2007

        Respectfully submitted,
        /s/ Janet Kravitz_____
        Janet Kravitz (pro hac vice)
        KRAVITZ, BROWN & DORTCH, LLC
        65 East State Street, Suite 200
        Columbus, Ohio  43215
        Tel:  614.464.2000
        Fax:  614.464.2002

jkravitz@kravitzllc.com


/s/ Amy Richardson
Amy Richardson
Harris, Wiltshire & Grannis, LLP
1200 Eighteenth Street, NW, Suite 1200
Washington DC 20036
Tel: 202.730.1329
Fax: 202.730.1301

Attorneys for Plaintiffs
Dastech International, Inc. and Dastech Industries, Ltd.

## **CERTIFICATE OF SERVICE**

    I hereby certify that on October 19, 2007, a copy of the foregoing pleading was served on each of the defendants, as well as the United States Attorney for the District of Columbia, along with the Complaint.

                                      /s/ Janet Kravitz
                                      Janet Kravitz

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DASTECH INTERNATIONAL, INC., *et al.*,

        Plaintiffs,

v.

PETER D. KEISLER, *et al.*,

        Defendants.

Civil Action 07-01296 (HHK)

## STATEMENT OF DISPUTED GENUINE ISSUES OF MATERIAL FACT

    Plaintiffs submit the following disputed material facts, pursuant to Local Civ. R. 7(h) and 56.1.

1. Plaintiffs dispute that Defendants truly recognize the continuing validity of Plaintiffs' DEA registrations because the DEA has been unwilling to return Plaintiffs' DEA registrations to them.  Plaintiffs' Reply at 33–34.

2. Defendants dispute Plaintiffs' assertion that Diversion Investigators ("DIs") Tilney and Salera coerced Neill Villacari's "voluntary" surrender of Dastech's DEA registrations.  *See* Plaintiffs' Reply at 9.

3. Plaintiffs assume that Defendants dispute that DI Salera made numerous reckless misrepresentations of material fact in his affidavit, as specifically delineated in Plaintiffs' Reply.  *See* Plaintiffs' Reply at 5–23.  If Defendants do not contest these allegations, then Plaintiffs would be entitled to judgment as a matter of law regarding their conversion claims.

1

4. Plaintiffs similarly assume that Defendants dispute that DI Tilney made numerous reckless misrepresentations of material fact in his Declarations, as more fully explained in Plaintiffs' Reply.  *See* Plaintiffs' Reply at 23–27.  Again, if Defendants do not contest these allegations, then Plaintiffs would be entitled to judgment as a matter of law regarding their conversion claims.

        Respectfully submitted,

        /s/ Janet Kravitz
        Janet Kravitz (pro hac vice)
        KRAVITZ, BROWN & DORTCH, LLC
        65 East State Street, Suite 200
        Columbus, Ohio  43215
        Tel:  614.464.2000
        Fax:  614.464.2002
        jkravitz@kravitzllc.com

        /s/ Amy Richardson
        Amy Richardson
        Harris, Wiltshire & Grannis, LLP
        1200 Eighteenth Street, NW, Suite 1200
        Washington DC 20036
        Tel: 202.730.1329
        Fax: 202.730.1301

        Attorneys for Plaintiffs
        Dastech International, Inc. and Dastech
        Industries, Ltd.

## **CERTIFICATE OF SERVICE**

    I hereby certify that on October __, 2007, a copy of the foregoing pleading was served on each of the defendants, as well as the United States Attorney for the District of Columbia, along with the Complaint.

                                          /s/ Janet Kravitz_____
                                          Janet Kravitz